Good morning, Your Honors. Dennis Reardon and Mark Zilbersmith for Appellant Mohsen. I have a bit of a cold. I apologize for any thickness in my voice. Your Honors, now I know why it's so difficult to win a motion in the San Francisco Superior Court. That's a tangential point. It is one of the benefits or burdens of our profession that we get to see human behavior in its full spectrum of strangeness and wonder. And this case is very strange indeed. It is the strange and self-destructive conduct of my client that put these criminal proceedings in motion. And while his conduct certainly in many ways was very worthy of censorship or ought to be censored, whether it was constituted the specific crimes charged in this case was a very real question. It was to be addressed at a very unusual and, in my experience, bifurcated proceeding between criminal charges of perjury and obstruction, wire fraud coming out of a claim of perjury and obstruction in a civil patent case, and on the other hand, charges of solicitation of acts of obstruction or violence. Counsel, on your – you've got a couple of arguments I want to ask you about. That's what matters. One is it appears that the judge just flat-out erred by not calling counsel in when he got a note from the jury. Right. But I can't see where it matters. It looks as though, first of all, there's no way the defense would want the jury to have the indictment. The whole idea of getting a severance was so that the jury would not be looking at the accounts that were not currently being tried. For another thing, defense ordinarily does not want a highly prejudicial indictment read to the jury, and for a third, I think they'd already discussed that. So I don't understand why there would be any harm in the judge's error. Let me get right to that, Your Honor, because the Court is probably operating on the basis of a false statement made by the government in a recent brief. So there are two answers to the question. One, was it error? Well, Judge Shub at the end said, I'll never – he literally said in the record, I'll never get a note asking for a drink of water from jurors without having counsel here. I used to call the lawyers in when I got a note about a drink of water. That's a big nuisance, but it avoids the error. So it's absolutely error. It's Federal constitutional error under this Court's en banc decision in France v. Hazy. And in the last six months, six judges of this Court, judges Reinhart, Berzon, Thompson, Bea, Graber, and Reimer, have held that if you – literally, and we've cited Benford to the Court – if you do not consult counsel on a juror note, it is structural error reversible per se. Structural error? Absolutely, Your Honor. Every time we say structural error, the Supreme Court reverses this. Well, but the Supreme Court recently in Gonzalez v. Lopez said deprivation of counsel is structural error. And six judges of this Court, what the judges said – Deprivation of counsel generally, but not calling the lawyers in on a jury note? Because as this Court in its en banc decision said in France v. Hazy, not calling the jurors into a jury note, lawyers in, is a deprivation of counsel at a critical stage of a trial. And what they did in Benford is they said, look, we've got a claim here of ineffective assistance of counsel, deprivation of counsel at a critical stage because the lawyer didn't show up at a pretrial hearing. And what judges Reimer, Bea, and Graber said is if that was a critical stage of the trial, slam dunk, it's over. This conviction has to be reversed. They say, as an example of a critical stage of a trial, the seat of a jury note, citing France v. Hazy, which is the en banc decision of this Court. They then go on to say that that was a pretrial status conference where nothing happened. It wasn't a critical stage of the trial.  And then they go on to say that if there's no reason to respond to a jury note, reversal is automatic. And that's Benford, which we've cited to the Court in our recent letter. Moose Ledeen, which is Judges Reinhart, Erzon, and Thompson, said deprivation of counsel, a state habeas batter, at a critical stage of the trial, a jury note. If this was a direct appeal, we would reverse because it's structural error. But because it's a state habeas corpus, then we're under the standard of a substantial and injurious effect, and they found none there. So the first response to this question, Your Honor, is that we need amplification of the definition of murder and whether implied malice is included or excluded. It was. And the Court actually notified counsel, which it didn't hear. They were on their way over, and he said, oh, just read the jury instructions. And one could argue that that's what he would have told them if counsel had been there. Hadn't the judges – hadn't the judge and the lawyers already considered, discussed, and decided in this case whether the jury would get the indictment and the lawyers, including especially the defense, had said the jury should not get the indictment? That is an absolute falsehood, Your Honor, and let me take you through it. Okay. Help on that. Because this is critical. What happens is in pretrial proceedings, where that comes from is that when this was being argued on the new trial motion, counsel for the government, as Harris said, that everybody had agreed that the jury wouldn't get the indictment in a pretrial proceeding. You will find that at ER 379. She represents that to the Court, and she said, and you remember, Your Honor, everybody agreed, and before trial we only gave them a redacted indictment. That was absolutely false. Here's what happens. And read the ER on this. The defense before trial says, Your Honor, we're going to have a trial on the perjury counts first. Don't tell them about these sensational charges of violence and obstruction of justice. And the judge says, no, I overrule you, defendant. You have preserved your record, okay? You have an appellate issue, because I am defying your request or denying your request to not have the jury read the entire indictment. I'm going to read it to the entire indictment, and this is at ER 229, 235. He turns to Ms. Harris and says, Ms. Harris, you're going to have to defend this ruling on appeal, because the defense just asked not to have the indictment read, and I'm reading it. And at ER 231, you will see where the record he talks about, the judge talks about the record being clear, and then he reads the charges, including solicitation of murder, to the jury. You'll find that at ER 556, 558. He reads all of the charges and then says, the only thing that's redacted are the charges against the other co-defendant who's pled guilty. So what happens in this case is the jury gets the entire indictment, including the solicitation of murder charge, before the trial begins, over vehement defense objection. Then what happens is that the counsel for the government argues in closing to the jury in the first phase, oh, by the way, he's guilty. The truth is he's guilty of every charge in the indictment. Every charge in the indictment they have learned, and there's extensive voir dire. There's a huge voir dire prior to trial on the murder charge. So the jury knows he's charged with murder. They have a solicitation of murder. They haven't heard any evidence about that. Counsel gets up for the government and says he's guilty of every charge in the indictment. And the jury, what does the jury do? The jury says let's we want to see the indictment. Counsel? Yeah. I want to kind of change the argument here. What jurors asked for was the indictment. Right. They did not ask that some part of it be explained or anything else. It just says give me the indictment. Right. Well, at that point they had not received the verdict form. They had not yet received the exhibits. And what the judge ultimately said was, well, when they got this other material, they wouldn't have asked for the indictment. So here we have a situation where they're saying, well, that really isn't critical at this point. Now, what I really am worried about in this case is whether it shouldn't have been just phase one and phase two, it maybe should have been two separate trials. Because the complaint is that in the first one they're really supposed to be just trying out whether there was perjury and whether there was fraud, wiretap and so forth. Not wiretap, but violation of the fraud in the wire. So tell me why it's so significant in this case or why you shouldn't be turning your attention as to whether the two should have been tried separately. Well, Your Honor, they're very much related in this sense. I couldn't agree with you more that they should have been tried separately because we have a jury being asked to consider technical charges where they have to decide materiality in a patent suit, which is the most technical issue you can imagine. That was the issue in the patent suit. And they're hearing, oh, by the way, this guy over here is accused of soliciting the murder of a Federal judge, a charge that turns out to be hollow and false. So they're wide-eared on that. They hear all about that. That in itself was error to prejudice the first stage of the trial with that. But then we have counsel get up in closing and say he's guilty of all the charges in the indictment. And he has also said, by the way, you can consider and find him guilty based on things not in the indictment, which is the whole Lobo notes issue. So, Your Honors, I turn to you and say when the jury says let's see the indictment, what counsel could have done is say, Your Honors, let's ask them why they want to see the indictment. Because if the answer is, well, there's that argument about the Lobo notes or we heard about a murder charge and counsel has said they're guilty of all the charges in the indictment, government counsel. I'm not suggesting, counsel, that the district judge should have quizzed the jury about what their deliberations were during deliberations. I find that to be astounding. Your Honor, I am saying that if a judge, it's absolutely appropriate to say if a judge gets a note that says we'd like to see the indictment, I mean, judges all the time say they're asked for testimony. Are there portions of the testimony that you want to see? Is there a position? Because this judge is faced with intelligence. We never do that. We never ask the jury any questions because that would interfere with deliberations. We just ask the lawyers for their advice, and all of us judges on the Alaska District Court, and then we just gave the jury whatever we wanted to give them. But we didn't want to ask them, well, what do you think of this? What do you mean by that? But, Judge, what you just said is you get a note like this. Is that New York, too? Oh, sure. You get a note like this, and you turn to the lawyers and say, what do you think of this? What should we do with this? What do you think of this? And we all just speculate on why the jury is asking and come up with an answer. And the defense has the constitutional right to do that, and it was deprived of in this case. We have to remember that the question in this case of to see the indictment You are suggesting that the defense can ask the judge to ask the jury why do you want this? Well, what I am suggesting, Your Honor, is this, is that this is an extraordinary case. They've asked for the indictment. And what the defense There's absolutely nothing extraordinary about asking for an indictment. I've seen it happen a million times, and I've said no. But, Your Honor, how many times does the indictment contain murder charges that the jury has heard about, been voir dired on, but is not relevant to the proceeding that they're in? All the more reason to say no. Absolutely. Why would you want them to have it? Why would the defense want them to have it? I don't get it. Your Honor, what the defense could say is this. Your Honor, they're asking for the indictment. Now, they hadn't done it before. It could say, we just realized that at the end of the case, the prosecutor said he's guilty of all the charges in the indictment, and they know And did the jury get There used to be a standard instruction, I always gave it, where I'd tell them the charges against the defendant are not evidence. The indictment is not evidence. All the indictment is is an accusation that puts the matter before you. Is there still that standard form instruction, and was it given in this case? At the beginning of the case, I assume that it was, Your Honor. But look at this. Couldn't counsel have said, Your Honor, they're asking for the indictment, the AUSA just said he's guilty of all the charges in the indictment, and they know there's a solicitation of murder charge in the indictment. I'm not getting across to you. The reason why you always ask counsel to come in when you get a note from the jury is that the answer that you give once they're deliberating may have a lot of force. For example, if they ask you what kind of intent is needed, and you tell them for this particular crime no intent is needed, all that you need is knowledge that, oh, you don't have an NPDES permit or something, that's really important. So lawyers get to consult. But there's another reason. On this one, I can't figure out why, after the most extensive consultation and doing whatever defense counsel wanted, the judge would have done anything different from what he did. All right. Let's pose this. This is obviously critical. What the Court is saying is why can't we write an opinion that, contrary to the opinion of six of our colleagues in the last six months, says that it is not structural error, but it is, it has to be proven harmless beyond a reasonable doubt. And we don't know what counsel would have suggested in this colloquy. We don't know whether the jury, if called in in response to counsel's presence, might not have revealed more than they did in the note. But even though we don't know it, we can say, beyond reasonable doubt, that whatever we don't know wouldn't have made any difference. One of the critical reasons you call in counsel, Your Honor, with all modesty, I'm sure you'll agree, is sometimes lawyers think of something about the implications of the note that the judge has not.  That's why I just asked you this question. But that's why we asked you. That's why we asked you. Right. And what I am saying is in a case in which you know much more than I do about this case, so I'm asking you, what in the world would lawyers want a different answer for? Because two things were true. Because they could well have realized that AUSA Waldinger had said you can convict them on the basis of the Lobo notes, which are not in the indictment, and the jury might have been trying to figure out whether those charges were part of the indictment. And he might have also said, Your Honor, this triggers the fact that we now realize he asked them to convict on all charges which invokes the murder charge when we need now a strong admonition that they are only to consider the charges in the indictment which are before them for this phase. And we need an admonition that the government was wrong to mention all the charges in the indictment. Would the verdict form limit them to this phase? Wouldn't the verdict form limit the jury to the phase of the case that was before  Well, it wouldn't. The jury can't write guilty if there's no blank for writing it on the verdict form. But that doesn't mean they can't say, look, we had the government telling us that he's this guy is also that violent offender that we heard about in voir dire, which the defense didn't want to have injected into phase one at all. As Judge Fletcher says, it was highly prejudicial to have a trial with those charges in it. The government absolutely insisted and the Court insisted in informing them of charges in voir dire that were not going to be part of phase one, and then the government refers to the entire indictment in its closing argument, and then we get a note about it. So you're going to have to – this Court is going to say this is Federal constitutional error and the burden is on the government to prove beyond a reasonable doubt that nothing could have happened at that conference which would have made a difference and we don't know what would have happened. Counsel, afterwards, a new trial motion suggested a number of things they could have done, and we don't know exactly what the jury was thinking because they didn't come out and explicate what their thinking was. But we can say beyond a reasonable doubt that even though we've got a Federal constitutional deprivation of the right to counsel, beyond a reasonable doubt it couldn't have made any difference. And our six colleagues were wrong in holding that it's structural error, so let's go on bonk and have the fight at that level. The other thing that is true is that there would hardly be a – in one sense, any injustice in having a new trial on phase one when we know that the key issue in phase one, which was was any of this material under Patent Law could not possibly have been resolved by this jury because they didn't know anything about Patent Law. They didn't know about the presumption of validity. They didn't know that – that nothing that the defendant did as to date of conception of the trial. That's a plain error issue, right? The defense did not ask for an instruction explaining the critical parts of Patent Law? Well, the defendant did, but his counsel did not. And the reason it wasn't fully ruled on by the Court is that the Court then wouldn't let new counsel raise this issue on a new trial motion. It would have – we would have had a fuller record of it in that context and a fully developed claim that could affect the assistance of counsel, but the trial judge wouldn't let new lawyers come in to litigate the new trial motion. The jury – I looked at the instructions, and it looks as though on every count where materiality was an element, the jury was instructed that materiality was an element and they had to acquit unless they found materiality beyond a reasonable doubt. Is that correct? Right. Absolutely. But no one – no one – oh, there isn't – there aren't ten judges in – who, without looking at this case, would have been able to say what the materiality issue turned on, because the fact of the matter is that there's a compelling claim that these things were immaterial as a matter of law because Mosin's patent was absolutely invulnerable to attack by – The test of materiality is pretty liberal, and my guess, based on, well, the way trials used to go, is that the jury would have looked at materiality in terms of did the defendant fake up his notes. He wouldn't have faked them up if they weren't material to the claim he was litigating. So if we think he faked them up, then they must have been material. And if we think he did not fake them up, then he's innocent. Right. And if the jury thought that, they would have been absolutely violating the Court's instructions because the Court said materiality – the defendant's belief, whether it's material or not, is irrelevant. It's an objective test. He did instruct on that. And objectively speaking, this patent was issued by the United States Patent Office after they considered the very claims of Quick Turn that they had prior art, and this is in the record here, that the patent examiner said, no, you don't have a patent. He has a patent. Your stuff isn't prior art. None of that could have made any sense to the jury because they didn't have presumed to be beyond a challenge unless the other party can come in with clear and convincing evidence of prior art, which was impossible in this case. And all of the lies wouldn't have made any difference because they went to date of conception and not to the validity of the patent. This is pretty complex stuff. But, Your Honors, I ask you this. The government has proposed that you take the position that courts don't need to discuss matters like this. If witnesses are called, then give their own opinions on materiality. That's their position, which the Court simply has to reject. And if you deal with it on the ground. No. All we have to decide is that error, if any, was not plain. Well, I agree, Your Honor. You don't have to accept that proposition. But if you look at this case, the centrality of patent law to the issue of materiality is indisputable and there's no patent law instructions given to the jury. They may have reached the result, but if they didn't write the result, it was by accident because they didn't know anything about the principles that determine materiality in a patent case. They knew it from the experts. They could decide which expert they believed, right? Well, except the proposition is that experts don't you don't get law from experts who had competing propositions. If someone got up, you had a situation in a criminal case where guilt or innocence depends on whether a crime is barred by the statute of limitations. In this case, they basically did get law from experts, though, didn't they? No. The testimony of the experts was not excluded. No. They did not get any testimony from the experts on the presumption of validity under patent law of a patent. They did not get any testimony that a patent is invulnerable to attack unless quick turn came in and proved by clear and compelling evidence they had prior art. And they did not get any evidence on the principle, which is embodied in this record, that when the patent office rejects, considers and rejects certain things as prior art, as it did in this case, then that is entitled to special deference. And with those principles, there's a compelling argument as a matter of law that this was immaterial simply because the patent was invulnerable, so the date of conception material never comes into play. Granted, it's a pretty complex case. And to say it's not plain error to have a patent materiality decision issued in a case where if the jury knew anything about the relevant law, it was by accident, would be difficult. I realize I'm several minutes. Thank you, counsel. We let you go way over because of the complexity of the matter. I understand that and I appreciate it. I expect even though you're over to be called up for a minute or so of rebuttal. Thank you very much, Your Honor. Counsel, please proceed. Good morning. May it please the Court. I'm Amber Rosen, representing the United States in this matter. I plan to address three issues here at oral argument, the jury note bifurcation and the patent law instruction. But, of course, if the Court has any other questions, I'd be happy to answer them. Well, counsel, my real consideration and concern is this case as to why it shouldn't have been tried completely separately. And this phase one, phase two thing bothers me a lot. Yes, Your Honor. Let me start there then. I think first it's important to keep in mind that the defendant has not really raised this issue properly. He's claiming basically a prejudice from the joinder of the counts. But the district court denied his motion for severance based on prejudicial joinder, and he's not appealing that ruling. Instead, he's appealing the bifurcation order. The bifurcation was granted not to separate the counts, but simply to prevent evidentiary spillover, basically to prevent the testimony of the informant from being used to convict defendant on the counts 1 through 20, as opposed to just counts 21 through 23. And there was, of course, no evidentiary spillover in this case, because premis, the informant testified only in phase two of the jury. But even to the extent this Court thinks that this issue is properly before it, the defendant received a fair trial even despite the fact that it was bifurcated rather than severed. First of all, this Court has found that rulings on bifurcation are virtually unreviewable. Secondly, the jury heard about the phase two charges only once, at the very beginning of the veneer, when the indictment was read to them. Secondly, the defense counsel asked the veneer, when choosing the jury, asked basically whether based on the nature of the charges, the jurors could be fair. There was no discussion of any specifics of the charges whatsoever, and the jurors that were all picked all said they could be fair, and defendant agreed to all of them. Moreover, the jurors were instructed multiple times by the district court that they were not to consider the indictment against the defendant, that the indictment was not evidence, and that the indictment should not be considered against the defendant. And finally, the phase two charges, even their existence, was never mentioned again during the entire phase one of the trial. So for an entire month, the jury heard absolutely nothing about them. And the jury acquitted on the most serious charges, solicitation for murder, suggesting that, of course, they could be fair and they weren't prejudiced simply from hearing about any of the charges. Moreover, even to the extent there were, there could be, it could be construed that there was any error from this procedure that the district court chose, it would be harmless. The evidence on the phase one charges, which is what he's contesting there was prejudice of, was overwhelming. The evidence was that he made up this phony notebook, that he had it secretly tested by experts, that he faked its theft, that he had mailed pages back to himself, that he lied about when it was made, he got his brother to lie about when it was made, and then he tried to flee the country on the eve of trial. So, you know, the evidence really was overwhelming, and the Court did not find that there was any error or that any error was, in any event, harmless. Does the Court have any further questions on that? Thank you, counsel. Is the, I guess your overwhelming evidence argument for harmlessness depends on there being no materiality. So what is your response to Appellant's argument that because materiality is fraudulent intent, intended flight, fraudulently creating phony notes, all this, just does not establish harmlessness? Well, first of all, I'd like to point out the defendant has not appealed the verdict on the basis that there was insufficient evidence of materiality. That's not a claim that's made in this appeal. So as it stands, the evidence was sufficient of materiality. Well, sufficiency, as you just said, is not before us. Correct. What's before us is overwhelming evidence of materiality. Yes. Sufficiency is way down here. Overwhelming evidence is way up here. Yes. So the response you just gave is not helpful. Go ahead. Let me try a different response, then. First of all, I'd like to say, you know, we don't think there was any error from it, but to the extent that there was, we do think the evidence was overwhelming on materiality, and here's why. The government presented an expert witness not involved in the underlying patent litigation, Kazin, who testified that the notebook would have strengthened the appellant's patent claim and may have even rendered some of the Quick Turn's defenses unavailable and certainly would have had an impact on whether Quick Turn even raised any prior art defenses. Because, of course, materiality needs to be viewed from the time that the false statements are made. So when he first proffered this notebook, Quick Turn didn't even need to, had not even put forth yet whether it had any prior art defenses, so his date of conception that he was alleging through this notebook may have even affected whether they brought any prior art defenses. The attorney for Quick Turn testified at the trial, and he said all through the litigation that the notebook was a big issue. You know, in June of 98, conception was a big issue. He said that in September of 99, Aptek, so that's Mosin's company, told the Court that they would have a hard row to hoe if they didn't have the notebook, that they were still relying on the notebook. At the motion to dismiss in 2000, the defendant is still claiming that the notebook was authentic. So the authenticity of the notebook was critical to the patent suit, which, as the threshold questions were, who had what patent and when. So I think there really could not be much issue with materiality. Moreover, defendant's expert witness even testified that where the other side puts forth prior art, the notebook alleging the date of conception would be relevant. And, of course, Quick Turn did initially put forth prior art. Their expert also said that if you use a notebook to establish a date of conception, it would be material to the patent suit at that point in time. So all three of these witnesses on both sides testified to the materiality of the notebook. I'd like to go back for a moment. Well, let me stick to this and just discuss the instructional issue that he does raise for just a moment. As the Court noted, this should be reviewed for plain error. It was not raised below. The defendant didn't raise it below either, but simply brought up the fact that he thought materiality had some special meaning in the patent law context. And the Court certainly no specific patent law instructions were ever presented to the Court. Moreover, there was good reason that no one presented any patent law issues. There were no patent law issues that the jury needed to decide. What they needed to decide was whether the defendant's lies about the notebook were material to the lawsuit. And for this, they needed some factual background. What was the lawsuit about? What was at issue? These were facts that the witnesses were certainly qualified to give, and they did give. And the witnesses on both sides gave basically the same factual background as to what was at issue in the civil patent suit. So the jury got the instructions that they needed. They got the definitions of materiality, which, again, are not being contested at this point. I'd like to turn for a moment to the issue of the jury note that the Court received during deliberations. The jury note in this case was not structural error, because the defendant had the opportunity to be heard before the verdict was rendered on the note, the parties had agreed not to give the indictment to the jury ahead of time, and the question that the note presented was not a substantive one. I'd like to point out that the case the defendant seems to rely heavily on, Franz, was not a case dealing with this issue. I'm sorry? Cronick. Yes. But this Circuit's recent en banc decision in Franz v. Harvey or Havis. Oh, I'm sorry. I misheard you. That was a case about the defendant's right to self-represent himself. It wasn't really a case about a note. And so I think we need to make that clear. But in any event, even Mousladen, you know, the case finding that a jury note of structural error doesn't apply in this case. First of all, with Dicta, in that case, the Court applied harmless error, and, you know, we think, as this Court pointed out, it really goes against the Supreme Court's precedent, which has said chronic error is extremely rare, and against this Court's precedent, which had already held harmless error to apply to these types of error. In the you just pointed out the lawyers had a chance to address what the response should have been to the jury's note before the deliberations were over. Yes. What happened was, Your Honor. Tell us about that. Absolutely. Excuse me. Wasn't the jury about to come back and deliver their verdict at that point? Yes. What happened was the jury indicated that it had a verdict, and the Court called the parties to come to court for that reason. If the instruction had been other than no, as it was in this case, wouldn't it have been all over? There was no reason to make any blunders. Well, I think the fact that the verdict had not yet been rendered does mean that there was a reason. In other words, the lawyers came to court, and before the jury was brought into the courtroom, the judge said to them, oh, by the way, I got this note from the jury, you know, asking was there a copy of the indictment with the specific charges that they could see, and I told them no. And it was two minutes before the jury was brought in. The defense counsel could have at that point made some kind of objection, said no, Your Honor, we think the court should have done something different, and it would not have been too late. They could have done that before they received the verdict, and counsel chose not to make any kinds of objections at that point. How long was the jury out? The jury was out for just under an hour and a half. You mean the whole deliberations were an hour and a half? Yes, Your Honor, which I think also goes to the harmlessness argument here. There was 15 charges. That's what I asked. Yeah, absolutely. I think tonight – I didn't realize that. Are you saying that I don't just mean that day's deliberations? Yes, Your Honor. In total, the jury was out for less than an hour and a half on these charges. You know, to not consider the defendant's ability to respond really contradicts this Court's reasoning in Benford, where the court there, you know, one of the reasons it held that the preliminary hearing wasn't a critical stage was because the lawyer could have asked for a continuing to the trial date both before and after. When did the jury go out, and when did they say we have a verdict? You mean what was the specific time? Yeah. It's in the record, Your Honor. I can't – I want to say that they maybe went out around 3 o'clock and came back around 4.30. I'm maybe a little – I'm maybe off on what the hour was, but the timing of it is in the record. We presented both the pages where it shows them going out and coming back in. Roughly mid-afternoon, and they had a verdict that afternoon. Yes. Yes. You know, at least it needs to be taken into consideration that there was this opportunity by counsel to object. Secondly, the counsel had agreed prior to the jury going out that it shouldn't get the indictment. And our citation for that is in the supplemental. I couldn't hear some words. I said, moreover, the parties had agreed that the indictment should not go to the jury, despite what defense counsel says. If the court looks at the supplemental excerpts of record at page 531, it can be a little confusing because there's 531a and 531b, but this is just 531 with no letter. The court is discussing, I think, the Rule 29 motion with the parties and asked and said in the course of that, see, we're not giving the indictment to the jury. And, you know, it goes on about the point they're making for the Rule 29. But no counsel made any objection to that or acted as though that had not been what they wanted. So it's clear that everyone had agreed before the jury went out to not give them the indictment. And as the Court has pointed out, that, of course, was something the defense would have wanted, given this bifurcation issue and the fact that the brother was also charged in the indictment. Moreover, the question here was not substantive. As the district court specifically found, you know, given the timing of the note that it came just 10 minutes after the jury was sent out to deliberate, they couldn't have been having any substantive discussions about the charges. They hadn't yet received the evidence, jury instructions, or verdict form. You know, other documents that would have outlined for them the specific charges. And to determine whether something is a critical stage, the Court must look at the nature of the note. Otherwise, a question such as can we have a drink of water would create automatic, reversible error if the judge did not consult the parties. And, you know, that would just be a result that I think this Court should not sustain. And Benford says, this Court's most recent decision says, that a proceeding must be of substance for it to be a critical stage. And in this case, you know, under the harmless error analysis, it was harmless, given the nature of the note, the timing of the note, and the fact that the parties had already agreed ahead of time that the indictment should not go back. Does the Court have any other questions? With that, I would say goodbye. Thank you. Your Honors, I will be brief. First, the claim that the severance isn't before the Court on appeal, we didn't challenge the refusal of severance. It's frivolous. If you look at the indexed-bar brief, issue number 2, the Court's refusal to sever the phase 1 charges from those in phase 2 was prejudicial constitutional error. Secondly, and this sets up the note issue, ER 204, the Court instructs the jury that the appropriate inquiry on materiality, quote, is not whether the misrepresentation actually influenced the finder of the fact of the case or what those persons actually involved in the case thought. So it isn't what the witnesses thought and it isn't their people involved in the case. It isn't what the defendant thought. It's an objective test. And the key piece of evidence there is that if you look at the patent approval of Mr. Mosen, which is in ER 340 and 341, you will find that listed as something that was considered and rejected as prior art was the Butts application, which was quick-turned supposedly prior art. So as an objective matter, the issue of data conception would have never come up here as an objective legal matter. The patent here was invulnerable to attack. The government is just not being honest when it says that the defense ever agreed to a procedure, certainly during deliberations, where the indictment would not be shown to the jury. It vehemently objected to giving the full indictment to the jury before phase 1. That is laid out, as I said, at 229 to 235. The government insisted that they hear about the murder charges in voir dire. The Court insisted that they hear and see the whole indictment. Once they have the whole indictment, they've heard about this in voir dire, and then government counsel refers to all of the charges and the defendant being guilty of them in closing and refers to matters outside the indictment. It is inconceivable that the Court could say that the defense agreed in response to that question that the answer to the question would be no. And finally, it comes down to this. We are either going to the Court has the alternatives of holding, and, you know, the six judges have said it, that jury note is a fatal stage and refusal to have counsel there, deprivation of counsel, is structural error, and we'll go on, en banc, on that issue. Or, but even if it goes to the harmlessness test, to say after the closing argument here that there is nothing that counsel could have suggested to the Court, that there is nothing in terms of interplay between the jury. A note about an indictment is not about water. It's about the substance of the case. To say that this Court can say beyond a reasonable doubt that it knows that nothing that would have taken place at the opportunity to object, to use Moussa Ledeen's language and confer with the Court, nothing could have mattered beyond a reasonable doubt is simply to say that it can speculate as to what would have occurred and find it harmless. The government cannot meet its burden of proving that the failure to confer counsel on that note was harmless. And it's contention that the defense had a chance to object when they're told that the judge has deprived them of that opportunity in the same sentence as he says, by the way, the jury has deferred to say that there's any meaningful opportunity to object then. They raised it at the first meaningful opportunity, which was the new trial motion. Thank you, Your Honor. Thank you, counsel. United States v. Mosen is submitted, and we are adjourned for the day.
judges: Fletcher B. , Kleinfeld, Duffy